FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 01, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DAVID G.,[1]

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

No. 1:26-cv-3044-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS**

Plaintiff David G. and the Commissioner of Social Security agree the Administrative Law Judge (ALJ) erred in finding Plaintiff not disabled. But the parties disagree as to whether the decision should be

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

remanded for further proceedings or for an award of benefits. Because further administrative proceedings would serve a useful purpose and this record does not establish disability, this matter is remanded for further proceedings.

## I. Background

Plaintiff filed his Title 16 application for benefits on February 14, 2022, alleging disability beginning January 31, 2022.[2] Following a hearing, ALJ Robert Schwartz denied Plaintiff's claim for benefits in January 2024, which the Court reversed and remanded for further proceedings in August 2025.[3]

On remand, Plaintiff appeared for a hearing before ALJ Derek Johnson in December 2025, at which Plaintiff and a vocational expert testified.[4] The ALJ announced that he would find Plaintiff disabled for, at minimum, the closed period of January 31, 2022, the alleged onset date, through October 1, 2023, and would hear testimony regarding the

---

[2] Administrative Record (AR) 45, 182.

[3] AR 18–33, 539–70.

[4] AR 493–506.

period since October 2, 2023.[5] Plaintiff testified he was severely impaired by anxiety, schizophrenia, panic attacks, depression, and suicidal thoughts.[6]

On December 16, 2025, the ALJ issued a partially favorable decision finding Plaintiff disabled from January 31, 2022, through October 1, 2023, and not disabled thereafter.[7] The ALJ found medical improvement occurred on October 2, 2023, and Plaintiff was then no longer disabled, based on treatment notes from Plaintiff's psychiatrist, Elzabeth Chambers, MD, Plaintiff's stability on medication, and Plaintiff's activities.[8] For the non-disability period, the ALJ found Plaintiff's alleged symptoms were inconsistent with the medical

---

[5] AR 499.

[6] AR 501–04.

[7] AR 461–83. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[8] AR 478.

evidence and other evidence.[9] As to the medical opinions, the ALJ found:

- the examining opinion of Thomas Genthe, PhD, not persuasive.
- the treating opinion of Dr. Chambers not persuasive.
- the reviewing opinion of David Morgan, PhD, not persuasive.
- the reviewing opinions of Leslie Postovoit, PhD, and Sheri Tomak, PsyD, persuasive.[10]

As to the sequential disability analysis for the non-disability period, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since January 31, 2022, the alleged onset date.
- Step two: Plaintiff had the medically determinable severe impairments of a mood disorder, an anxiety disorder, and ADHD.

---

[9] AR 478–80.

[10] AR 480–82.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.
- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels, except he could understand, remember, and carry out simple tasks; tolerate occasional changes in a routine work setting; and tolerate occasional interaction with the public, coworkers, and supervisors. This RFC was the same as the RFC from the disability period except for removing the additional limitation that Plaintiff "required the flexibility to be off task 15% of the time or absent the equivalent of two workdays per month."[11]
- Step four: Plaintiff had no past relevant work.
- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant

---

[11] *Compare* AR 478, *with* AR 469.

numbers in the national economy, such as hand packager, motor vehicle assembler, and industrial cleaner.[12]

Plaintiff did not file written exceptions to the ALJ's decision with the Appeals Council, and the Appeals Council did not assume jurisdiction on its own, so the ALJ's decision became the Commissioner's final decision.[13] Plaintiff now appeals to district court.[14]

## II. Standard of Review

When considering the ALJ's findings, the court is constrained to the reasons and supporting explanation offered by the ALJ.[15] The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[16] and such error impacted the

---

[12] AR 468, 476–83.

[13] 20 C.F.R. § 416.1484.

[14] ECF No. 1.

[15] *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[16] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

nondisability determination.[17] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18]

---

[17] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[18] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

## III. Analysis

Plaintiff argues the ALJ committed several errors in finding Plaintiff not disabled as of October 2, 2023: (1) substantial evidence does not support medical improvement as of October 2, 2023; (2) the ALJ improperly assessed Plaintiff's testimony; (3) the ALJ improperly assessed the medical opinions; and (4) the RFC is consistent with disability based on vocational-expert testimony. Plaintiff contends no further proceedings are necessary and that the Court should remand for an award of benefits to continue from October 2, 2023, onward. In response, the Commissioner concedes the ALJ reversibly erred and does not challenge any of Plaintiff's arguments for error. The Commissioner, however, asserts this case should be remanded for further proceedings, arguing disability is not clearly established and that the ALJ must reevaluate the medical opinions, reassess whether medical improvement occurred as of October 2, 2023, and obtain further vocational evidence.

The only issue on appeal, therefore, is whether this case should be remanded for further proceedings or for an award of benefits. When a harmful error occurs in the administrative proceeding, remand for

further administrative proceedings is the usual course.[19] However, the court may remand for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand . . . .[20]

When these three elements are satisfied, the decision whether to remand for benefits or further proceedings is within the court's discretion, as it "is a fact-bound determination that arises in an infinite variety of contexts."[21]

Here, further proceedings would be useful and this record does not establish disability. The ALJ found medical improvement such that Plaintiff was no longer disabled as of October 2, 2023.[22] The ALJ

---

[19] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

[20] *Ortiz v. Bisignano*, 179 F.4th 691, 706 (9th Cir. 2026).

[21] *Treichler*, 775 F.3d at 1100 (citation modified).

[22] AR 478.

considered that on that day, Plaintiff reported to Dr. Chambers that he had a stable mood, liked riding the bus, had recently went to visit friends, and got along with his parents.[23] The ALJ also considered that Plaintiff then denied having panic attacks, mood swings, or anger outbursts; was taking medication for ADHD and anxiety; was sober; and had a normal mental status exam.[24] The ALJ highlighted similar normal reports and mental status findings throughout the treatment records since October 2, 2023.[25] The ALJ stated: "During this period, the claimant also enjoyed volunteering at the food bank, took the bus into town frequently, visited friends in another town, met a significant other online, was considering a return to work, and was planning to move out of his parents' place."[26] The ALJ provided these same reasons

---

[23] AR 478–79 (citing AR 964–65).

[24] AR 478–79 (citing AR 964–65).

[25] AR 478–80 (citing AR 803, 941–44, 949–50, 952–53, 955, 958, 961–62, 1086–87, 1089, 1094, 1099, 1105–07).

[26] AR 478.

for discounting Plaintiff's subjective complaints and finding the opinions of Drs. Genthe, Chambers, and Morgan not persuasive.[27]

On remand, the ALJ must reassess whether the evidence demonstrates medical improvement or continuation of disability as of October 2, 2023. First, the normal mental-health observations throughout Dr. Chambers' treatment notes resemble those the Court determined in its first remand order insufficient to support the non-disability decision:

> [W]hile Dr. Chambers often made normal mental-health observations during her sessions, her treatment notes also reflect that Plaintiff had difficulty managing his emotions, as was reflected in his police involvement resulting from his aggression toward his parents, a woman, and a neighbor, as well as when he visited the emergency department on two occasions after repeatedly hitting his head on the jail's cement wall. Thus, any improvement or stability noted by Dr. Chambers in her treatment records, must be considered in the context of the longitudinal record revealing that Plaintiff struggled significantly with personal interactions, behavioral judgments, and impulsivity.[28]

---

[27] AR 479–81.

[28] AR 553–54 (footnotes omitted).

Nonetheless, even though Dr. Chambers' observations during her treatment sessions do not provide substantial evidence by themselves to support a non-disability finding, it is not clear on this record that after October 2, 2023, Plaintiff had similar incidents of instability as he did before. Seemingly, the only similar incident is when he told Dr. Chambers in May 2024 that he punched someone in self-defense.[29] As to other records possibly revealing continuing behavioral, interpersonal, and impulsivity struggles relevant to the RFC, in December 2023, he reported making an irresponsible and impulsive online purchase;[30] he testified it was helpful that he paid for a service that allowed personal rides on the bus with just him and the driver;[31] in March 2025, he reported having some passing suicidal thoughts;[32] a few weeks later, he reported some suicidal thoughts again and that he

---

[29] AR 830.

[30] AR 844.

[31] AR 505.

[32] AR 804.

"gets paranoid that people watch him or follow him sometimes";[33] in April 2025, a primary care provider noted Plaintiff was withdrawn and uncooperative with an irritable and flat affect;[34] and later he described being "fussy" when things did not go his way and feeling more hopeless.[35] This evidence does not make clear whether Plaintiff's RFC improved to the point of no longer requiring 15% off-task time or two absences per month due to non-exertional limitations. Instead, the ALJ must reevaluate whether the longitudinal record, as it did for the prior disability period, supports Plaintiff's disabling testimony, the disabling medical opinions, and medical improvement despite the normal observations throughout Dr. Chambers' records.

Second, the ALJ must reassess the evidence regarding Plaintiff's court-ordered community service at the food bank. The ALJ appropriately considered Plaintiff's community service because Plaintiff's ability to complete community service is directly relevant to

---

[33] AR 802.

[34] AR 908.

[35] AR 789, 794.

his capabilities at work. However, the ALJ disregarded relevant facts about Plaintiff's community service. The state court accommodated his reported inability to emotionally handle eight-hour shifts on a work crew, permitting him to work at the food bank in shorter increments of time, and he worked at the food bank in four- or five-hour increments.[36] His boss at the food bank was his former classmate.[37] He averaged only ten hours of community service per month over an eight-month period.[38] While these facts justify reassessment of whether Plaintiff's community service supports removing the 15%-off-task and two-absences limitations, they do not clearly establish disability. Further proceedings on this matter are therefore appropriate.

Third, further vocational evidence will be useful. The vocational expert testified that a hypothetical individual with the RFC in the

---

[36] *See* AR 811, 832.

[37] AR 829.

[38] *See* AR 832 (April 2024: reporting 156 hours remaining); AR 811 (January 2025: reporting 75 hours remaining).

ALJ's decision could perform the jobs the ALJ identified at step five.[39] But the vocational expert then testified it was "probable" that an individual performing those jobs "would have more than occasional . . . contact with a training person in the initial onset of the job," though the central functions of the jobs would not require more than occasional contact with others.[40] The ALJ, however, did not solicit further vocational testimony about the training requirements for the step-five jobs, and the ALJ's decision did not discuss whether Plaintiff, who was limited to only occasional contact with others, could adjust to more-than-occasional interactions for training purposes. Further proceedings, therefore, are appropriate.

## IV. Conclusion

With the parties having agreed the ALJ reversibly erred, the Court finds remand for further proceedings is the appropriate remedy. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process for

---

[39] AR 496–98.

[40] AR 498–99.

October 2, 2023 onward. Additionally, on remand, the Appeals Council is to instruct the ALJ to:

- reevaluate whether medical improvement occurred as of October 2, 2023, Plaintiff's testimony, and the medical opinions in light of the longitudinal record relevant to Plaintiff's non-exertional capabilities despite Dr. Chambers' normal treatment notes;
- reevaluate whether Plaintiff's community service supports an improvement in non-exertional limitations; and
- offer Plaintiff the opportunity for a new hearing, at which the ALJ can receive additional Plaintiff testimony regarding his functioning at community service and additional vocational-expert testimony, including regarding the training requirements for any jobs identified at step five and Plaintiff's ability to complete any such training.

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social**

**Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 10 and 14**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 1st day of October 2026.



EDWARD F. SHEA
Senior United States District Judge